IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

ALBERT BIERMAN, SR.  \*

\*     Civil Action No. CCB-22-12

v.

\*

MOE DAVENPORT, *et al.*

\*

\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## MEMORANDUM

This case concerns the allegedly fraudulent denial of an application to sell an easement of agricultural land to the Maryland Agricultural Land Preservation Foundation. The plaintiff, Albert Bierman Sr., has brought a nine-count complaint against Defendants Harford County, Maryland, Moe Davenport, and William Amoss. (ECF 3, Compl.). Now pending before the court is the defendants' motion to dismiss (ECF 6). The motion has been fully briefed and no oral argument is necessary. *See* Local Rule 105.6 (D. Md. 2021). For the reasons that follow, the court will grant the motion.

## BACKGROUND

This litigation arises from the rejection of Albert Bierman's application to sell an easement for his land to the Maryland Agricultural Land Preservation Foundation ("MALPF") to be used for agricultural purposes. The MALPF program was established by the Maryland General Assembly in 1977 to "curb urban sprawl" by "preserv[ing] productive agricultural land and woodland which provides for the continued production of food and fiber for the citizens of the State." Md. Code Regs. 15.15.01.01 (2021). The program "is voluntary on the part of landowners and is dependent upon the cooperation of local government." *Id.* 15.15.01.01-1.A. Easements purchased from landowners by the MALPF Program restrict the use of the land and maintain its

1

character as agricultural land or woodland, and contain significant limitations on termination of the easement. *Id.*

On May 28, 2020, Mr. Bierman executed an application to sell an easement to the MALPF for fiscal year 2021, which was subsequently submitted to Harford County, Maryland, on his behalf. (ECF 3 ¶ 11; ECF 6-1, Ex. A, Bierman 2021 Application). In his application, Mr. Bierman submitted for consideration two plots of land he owned in Harford County, labelled Parcels 669 and 85. (ECF 3 ¶¶ 9, 10).

After submission, Mr. Bierman alleges that Mr. Davenport, Chief of the Development Review section of the Department of Planning and Zoning for Harford County, directed Mr. Amoss, head of the Harford County Agricultural Land Preservation division, to make material changes to the application so that it would be disqualified and rejected. (ECF 3 ¶¶ 11, 14, 15; *see also* ECF 6-2, Ex. B, Altered 2021 Application). Specifically, Mr. Bierman asserts that the defendants added seven pages and made "over 17 written alterations" to unspecified portions of the application. (ECF 3 ¶ 13). Importantly, both the original application submitted by Mr. Bierman and the application altered by the defendants listed the total acreage under consideration to be encumbered by the proposed easement as 123.65 acres. (ECF 6-1 at 1 ¶ g; ECF 6-2 at 1 ¶ g).

Relying on the altered application, the defendants concluded that Mr. Bierman's property was ineligible for inclusion in the program, as the eligible acreage consisted of only 57% of the particular soil classes necessary, below the minimum threshold requirement of 60% composition of such soil classes. (*Id.* ¶ 17). On September 21, 2020, the defendants informed Mr. Bierman that his application was rejected because of the failure to meet the minimum threshold requirement.

(*Id.* ¶ 16; ECF 6-3, Ex. C; Denial Letter).[1] Mr. Bierman avers that his fiscal year 2019 application to sell an easement for the same land was accepted by MALPF as conforming to the threshold requirement. (ECF 3 ¶ 17; ECF 1-1 at 27, Letter to Harford County).

On November 16, 2021, Mr. Bierman filed his present complaint alleging state and federal constitutional as well as common law claims against the defendants in the Circuit Court of Harford County, Maryland. (*See* ECF 3). The defendants subsequently removed the case to the District of Maryland asserting federal question and supplemental jurisdiction pursuant to 28 U.S.C. § 1331 & 1367(a) (ECF 1, Not. of Removal) and filed a motion to dismiss these claims (ECF 6), to which Mr. Bierman responded (ECF 8, Opp'n) and the defendants have replied (ECF 10, Reply). The court now considers the motion.

## DISCUSSION

### I. Motion to Dismiss

#### a. Standard of Review

To survive a motion to dismiss, the factual allegations of a complaint "must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). "To satisfy this standard, a plaintiff need not 'forecast' evidence sufficient to prove the elements of the claim. However, the complaint must allege sufficient facts to establish those elements." *Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012) (citation omitted). "Thus, while a plaintiff does not need to demonstrate in a complaint that the right to relief is 'probable,' the complaint must advance the plaintiff's claim 'across the line from

---

[1] The denial letter also notes, but does not explicitly reject Mr. Bierman's application for, a strip of land separating the parcels from one another, and implies that such non-contiguous land may prevent qualification of the land for the program in future fiscal years. (*Id.*).

conceivable to plausible.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). Additionally, although courts "must view the facts alleged in the light most favorable to the plaintiff," they "will not accept 'legal conclusions couched as facts or unwarranted inferences, unreasonable conclusions, or arguments'" in deciding whether a case should survive a motion to dismiss. *U.S. ex rel. Nathan v. Takeda Pharm. North Am., Inc.*, 707 F.3d 451, 455 (4th Cir. 2013) (quoting *Wag More Dogs, LLC v. Cozart*, 680 F.3d 359, 365 (4th Cir. 2012)).

### b. The Defendants' Changes Were Permitted and Immaterial to the Decision to Deny Mr. Bierman's Application

Each of the nine counts of the complaint[2] rests on the truth of the allegation that the defendants materially and improperly altered Mr. Bierman's application. The defendants do not dispute that they altered the application, but rather provide evidence that the alterations were not illegal, and that many were immaterial to the ultimate decision not to purchase the easement from Mr. Bierman.

The court begins by identifying the changes to the document in question. While the complaint fails to allege with specificity which sections were edited or amended, the defendants have provided copies of the completed application, both edited and unedited (ECFs 6-1 and 6-2), and the court may consider these uncontroverted documents as integral and incorporated by reference into the complaint. *See* Fed. R. Civ. P. 10(c); *New Beckley Mining Corp. v. Int'l Union, United Mine Workers of Am.*, 18 F.3d 1161, 1164 (4th Cir. 1994) (citing *Cortec Indus. v. Sum Holding L.P.*, 949 F.2d 42, 47–48 (2d Cir. 1991) (deeming a complaint to include any documents incorporated in it by reference and permitting a defendant to produce such materials when responding to the complaint).

---

[2] Mr. Bierman's counts include claims for declaratory judgment, violations of the Articles 24 and 26 of the Maryland Constitution, the Fourth, Fifth, and Fourteenth Amendments of the U.S. Constitution, fraud, and tortious interference.

It appears that the changes are contained in five sections of the application: (1) the calculation of acreage under Part A on page 1; (2) whether certain acreage was withheld or permitted under Section 1(B) on page 2; (3) the development rights table on page 3; (4) the acreage of land of different uses under Number 8 on page 6 and (5) the qualifying soil acreage estimates listed under Number 12 on page 8.[3] (ECFs 6-1 and 6-2). Each change will be examined in turn.

### 1. Acreage Calculations (Page 1)

The acreage calculation under Part A on page 1 of the application shows various numbers (including the total acreage of the property, the number of preexisting dwellings, and acreage withheld from the easement, *inter alia*) have been modified, but Item (g), the "Total acres to be encumbered by easement" remains unchanged at 123.65 acres. (*Compare* ECF 6-1 at 1 *with* ECF 6-2 at 1). Unaltered Item (g) is used by the defendants as the denominator, or total acres to be encumbered, in the equation for the percentage of the proposed easement consisting of qualifying soils. (*See* ECF 6-3). The changes to this section, which appear to reflect the program administrator's method of calculating Item (g), are therefore immaterial to the application's denial.

### 2. Envelope Acreage (Page 2)

The second change identified by Mr. Bierman occurred under Section 1(B) on page 2, where the checkbox for "Is there withheld or permitted use envelope acreage?" changed from "no" to "yes," and a note under "Reason for withheld acreage" added which reads "Creation of four (4) residential 2.16 acre lots." (*Compare* ECF 6-1 at 2 *with* ECF 6-2 at 2).

---

[3] The seven appended pages referenced in the complaint (ECF 3 ¶ 13) are the form instructions, the veracity of which Mr. Bierman does not dispute in his response (ECF 8), and a copy of page eight, with the same values for qualifying soil types handwritten instead of printed, and an illegible signature added to the "signature and Title of Soil Conservation District Official" line, without other noticeable alterations.

Mr. Bierman fails to articulate in either his complaint or response brief why this specific change contributed to the denial of his application or otherwise prejudiced him. Regardless of its materiality, this alteration to the document was permissible as a matter of law. The power for the defendants to fill in this information is apparent from the face of the document: immediately above the altered section, in bold, the document informs applicants that the section is "[t]o be completed by the County Program Administrator or other County employee as necessary" (ECF 6-1 at 2).

### 3. Development Rights Table (Page 3)

The third change that Mr. Bierman identifies are alterations to the numbers contained in the "development rights table" on page 3 of the application. (*Compare* ECF 6-1 at 3 *with* ECF 6-2 at 3). These alterations appear to reflect, in part, the changes made on page 2 regarding the four 2.16-acre residential lots (totaling 8.64 acres). (*See* ECF 6-2 at 2, 3).[4]

As with the alterations to the first page of the application, Mr. Bierman does not allege how these changes to this page relate to the ultimate denial of his application. Nothing in the complaint or the denial letter suggests that the development rights on the property or those to be extinguished[5] were the cause of the application's denial. Accordingly, it is not plausible that these alterations were material to the denial of the easement.

### 4. Acreage Use Types (Page 6)

The next alteration cited by Mr. Bierman is that to the estimates of acreage of different uses of land under Number 8 on page 6 of the application. Here, there appears to be only two changes: (1) a reduction from seventy-three acres of "woodland" on the original application to sixty-seven

---

[4] Mr. Bierman elected to reserve family lots from the Deed of Easement. (*Id.* at 3).

[5] There appears to be a typo on ECF 6-2 at 3 listing the land area of the total development rights to be extinguished as 122.65 acres instead of the actual 123.65 acres, as listed elsewhere on the application and the same amount as Mr. Bierman requests for the easement.

acres on the altered application; and (2) a reduction from 124 to 118 "total acres." (*Compare* ECF 6-1 at 6 *with* ECF 6-2 at 6). The latter change is the result of the sum total being reduced by the six acres of woodland in the equation above it. (*Id.*).

As with the changes to pages 1 and 3, Mr. Bierman fails to allege specifically how this change resulted in the denial of his application. Neither number appears to be used in the numerator or denominator of the qualifying soils calculation which the parties do not dispute was the basis of the denial of Mr. Bierman's application. (*See* ECF 6-1 at 8; ECF 6-2 at 8).

### 5. Qualifying Soil Estimates (Page 8)

The final group of alterations cited by Mr. Bierman occurs on page 8, where Item number 12 requests the number of acres of specific qualifying soil types and the percent of the total acreage of the parcel each represents, individually and together. Specifically, the Bierman application leaves this blank, and the altered application finds only 57 percent of the parcels to be composed of qualifying soil types (31 acres of Class II soil, 16 acres of Class III soil, and 23.35 acres of Group Two soil, for a total of 70.35 qualifying acres). (*Compare* ECF 6-1 at 8 *with* ECF 6-2 at 8).

The defendants explain, in their denial letter, that they used the 123.65 acre figure provided by Mr. Bierman instead of the 117.84 total acre figure that, in 2019, resulted in approximately 60 percent of the land consisting of qualifying soils on the prior successful application. (ECF 6-3). These changes are therefore material, as they resulted in the denial of the application, but they were not made illegally. Rather, Mr. Amoss was required to make these alterations by the instructions listed on the form. (*See* ECF 6-1 at 8 ("To be completed by the County Program Administrator, see Instructions C.12.")). The instructions, included as the additional pages in the altered application, explain that "[t]he Program Administrator is responsible for determining whether the property meets the minimum soils criteria." (ECF 6-2 at 16). The Code of Maryland

Regulations confirms this authority, and specifies that MALPF retains "the discretion to select those easements which it shall purchase." Md. Code Regs. 15.15.01.01-1.C (2021).[6] These alterations were thus proper and fail to form a basis for the complaint against the defendants.

As the court has determined Mr. Bierman's core argument that the alterations to his application were not permissible is incorrect, there is no need to address the defendants' additional arguments regarding Counts II through IX; those counts will be dismissed. Count I, for declaratory judgment, however, requires additional resolution. The Maryland Court of Appeals has long held that, "[o]rdinarily. whether a declaratory judgment action is decided for or against the plaintiff, there should be a declaration in the judgment or decree defining the rights of the parties under the issues made." *Case v. Comptroller*, 219 Md. 282, 288 (1959); *see also Harford Mutual v. Woodfin*, 344 Md. 399, 414 (1997) ("[W]hen a declaratory judgment action is brought, and the controversy is appropriate for resolution by declaratory judgment, the trial court must render a declaratory judgment") (internal citations and quotations omitted). As both sides request a declaration, Count I will be dismissed, and the court will declare that the alterations the defendants made on Mr. Bierman's application did not cause Mr. Bierman to be improperly disqualified from the MALPF program.

A separate Order follows.

_____8/16/22_____   _____*CCB*_____
Date                              Catherine C. Blake
                                  United States District Judge

---

[6] To the extent that Mr. Bierman contends that the denial of his application for an easement constitutes interference with a possessory interest in his real property (*see* ECF 3, Count VII) applicants for easements have no constitutionally cognizable property interest, and thus are not entitled to due process protections. *Bosley v. Baltimore Cty., Md.*, 804 F. Supp. 744, 749 (D. Md. 1992), *aff'd sub nom. Bosley v. Bosley*, 986 F.2d 1412 (4th Cir. 1993); *see also Boucher v. Boyer*, 301 Md. 679, 688 (1984) ("[E]asement is broadly defined as a *nonpossessory interest* in the real property of another.") (emphasis added).